**STATE, ex rel. NEW WAY FAMILY LAUNDRY, Inc., Relator, v. INDUSTRIAL COMMISSION et, Respondent.**

Ohio Appeals, Second District, Franklin County.

No. 4736.   Decided July 16, 1952.

530

Bobbs, Boggs & Boggs, Toledo, for relator.
C. William O'Neill, Atty. Genl., Chalmers P. Wylie, James F. DeLeone, Asst. Attys. Genl., Columbus, for respondent.

**OPINION**

By THE COURT.

This is an original action in mandamus wherein the relator is seeking an order commanding the respondent, the Industrial Commission of Ohio, to find that one Thomas L. Shamp, an employee of the relator, did not sustain an injury in the course of and arising out of his employment and that his claim for compensation be disallowed.

The record reveals that the claimant, Thomas L. Shamp, was employed by the relator, New Way Family Laundry, Inc., as a driver-salesman; that while making deliveries of laundry on or about December 24, 1949, he suffered a cerebral embolism. On June 6, 1950, claimant's first application for compensation was filed and certified to by the relator. On November 2, 1950, the same came on for hearing before the respondent Commission and an order was made allowing the claim and a temporary total disability award was made. The claimant submitted his affidavit which disclosed his prior military service and his medical history resulting therefrom, and further revealed that on December 24, 1949, while making his deliveries on his route he stopped to deliver some bundles of laundry. It provided further as follows:

"* * * I had to make a stop to deliver a bundle; this was a very big bundle; it must have weighed more than 50 lbs.; I remember it cost seven or eight dollars, which is unusual. The bundle was so big and bulky that I had to climb into the bed of the truck to get it; the bed of the truck was about four feet high. I got the bundle but it was so big I couldn't use my hands to get down off the truck, so I jumped with the bundle

in my arms. I didn't feel anything right away but when I went in the house to deliver the laundry to the lady * * * she gave me a ten dollar bill * * * when I tried to make change for her was the first time I realized that anything was wrong. My fingers felt pricky like they were asleep and I couldn't make change. I pulled change out of my pocket and couldn't hold it. I dropped some change on the floor. I tried to handle the change for about two or three times and couldn't and finally the lady had to help me. I just handed her some change and she took what she needed and put the rest in my pocket. I got out to the truck alright but my right hand still felt funny."

The affidavit further states that the claimant made two more stops and had the same feeling of numbness in his right arm and that the same feeling appeared in the right leg. That on these next two stops, he had the same difficulty in using his right hand to make change. He then collapsed in the truck bed and lay there for about an hour before he could move. He was finally able to arouse himself and found that he could not talk nor use his right arm or leg and he then drove to a filling station operated by a friend of his, using his left arm and leg to drive.

In support of the claim Dr. Elmer Haynes, the claimant's family physician, submitted the following letter:

"Mr. Shamp was seen by me in his home on 12-24-49. The diagnosis at the time was that of a cerebral embolism. From the history the patient was working for a laundry as a driver salesman. It seems that early that morning he attempted to get off of his truck and jumped with a heavy bundle in his arms. When he went into the house, he did not feel right. He was unable to make change for a ten dollar bill because he was unable to use his right hand. He could not hold the money. He made two or three more deliveries and on one occasion was unable to tie up a bundle of laundry. About this time he noticed his right leg was numb and it was hard for him to stand. It seems he fell and was unable to move for some time. After he got his truck to a gas station, where a friend was working, the friend called the laundry company, and Mr. Shamp was seen by a physician and went home.

"When I saw the patient in his home, it was difficult for him to give out information. He was unable to use his right hand or leg. Since he wanted to go to a hospital in Findlay, his family physician in Findlay was called and the patient went there where he remained for about one week. It seems that after leaving the hospital in Findlay, he was hospitalized in Crile hospital for some time.

"My final diagnosis in this case was that of a cerebral embolism, which probably happened at the time the patient jumped from the laundry truck to the ground with a heavy bundle in his arms. I did not attempt to determine the origin of the embolism."

The file also contains the affidavit of Dr. Thomas M. Crinnion, a company physician, wherein he stated that he saw the claimant on December 24, 1949; that he made a diagnosis of cerebral hemorrhage; that he did not see the claimant after that and does not believe that the incident was caused by trauma.

We find nothing further in the record bearing upon the question of the cause of the disability, so it would serve no useful purpose to quote further from the same.

On June 20, 1951, an application was filed for a determination of the percentage of permanent partial disability, and on August 14, 1951, an award of 85 per cent was made.

The relator is urging that there is a complete absence of probative facts in the claim record to establish an injury; that respondent violated the Workmen's Compensation Law and that the respondent had no authority to make the said orders. The question therefore presented is whether or not the record discloses any facts or facts from which inferences could be drawn tending to establish that the claimant's injury was received in the course of and arising out of his employment, and that the same was accidental in character and result. This Court cannot order the respondent to make or set aside its findings in any claim wherein there is a factual issue. Under such circumstances the respondent had discretionary authority. **State, ex rel. Cook v. Industrial Commission, 53 Abs 497.** We are of the opinion that the letter of Dr. Haynes quoted supra presents a factual issue. It will be noted that he said:

"My final diagnosis in this case was that of a cerebral embolism, which probably happened at the time the patient jumped from the laundry truck to the ground with a heavy bundle in his arms. I did not attempt to determine the origin of the embolism."

We think a reasonable interpretation of this statement is that Dr. Haynes was of the opinion the cerebral hemorrhage was the result of the jar the claimant received when he hit the ground with the heavy bundle in his arms; that he would not be positive as to his conclusion for the reason that he made no definite attempt to ascertain the same.

The testimony of the claimant is probative, to a degree, that the injury complained of was accidental in origin and that it arose out of and occurred in the course of his employ-

ment. Manifestly, he was in good health and worked at his job up to the time when he fell in removing the laundry bundle from his truck. Immediately after the fall and continuously therefrom he manifested symptoms which could be referable only to the injury sustained when he fell. The record requires the conclusion that the condition from which he suffered succeeding his fall and until and after the examination by his physician was proximately connected with the cerebral embolism, which is established by the testimony of the physician. If we are correct in our interpretation a factual issue was presented which the respondent was authorized to act upon. Giving to claimant a most favorable interpretation of the evidence, the respondent did not abuse its discretion in making the award. The relator insists that there is a total failure of proof of accidental injury and that there was no evidence to establish that this laundry bundle was removed in an unusual manner or method from that ordinarily used in removing laundry bundles. We think the record indicates that because of the size of this bundle the claimant was required to pursue a method different from the usual one. This makes the same accidental in character.

In the case of **Nelson v. Industrial Commission, 150 Oh St 1,** at **page 12,** in considering compensable injuries under the Workmen's Compensation Act the Court said:

"Thus it is apparent that in order to have a compensable injury a person need not be violently struck by an outside agency, but such an injury may arise through an external means such as extreme heat, an extraordinary strain from overexertion or a noxious fume or poison, but this court has not held, even since the amendment to the statute to the effect that 'injury' means 'any injury,' that the sudden death of a workman, while working in the course of his employment, of itself proves a compensable injury. Although a liberal construction is justly required in the interpretation of the Workmen's Compensation Act, in order to have death compensation there still must be some evidence that the death of the workman was caused or contributed to by some act which was different in kind or in exertion from the regular, ordinary work performed by the workman and those engaged in like occupation."

The application will be denied.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.